570 So.2d 1168 (1990)
Douglas Edward FINDLEY
v.
CITY OF BATON ROUGE.
No. 90-C-0635.
Supreme Court of Louisiana.
December 3, 1990.
Rehearing Denied January 17, 1991.
Arthur Cobb, Cobb & Cobb, Baton Rouge, for Douglas Edward Findley, plaintiff-applicant.
*1169 Cyrus J. Greco, Helen N. Crouse, Greco & Greco, Baton Rouge, for Baton Rouge Recreation and Park Com'n, defendant-respondent.
LEMMON, Justice.
This is an action against the owner/operator of Olympia Field, a public park in Baton Rouge, to recover damages for injuries sustained by plaintiff which were allegedly caused by an unreasonably dangerous condition in the park.
The issue presently before this court is whether the amended petition, naming the Recreation and Park Commission for the Parish of East Baton Rouge (BREC) as a defendant, relates back for the purposes of prescription under La.Code Civ.Proc. art. 1153 to the date of filing of the original petition which named the City of Baton Rouge as the sole defendant.[1]
On July 11, 1983, plaintiff was riding his bicycle on a roadway through Olympia Field. When he struck a "pot hole", he was thrown from the bicycle and injured his shoulder.
On August 15, 1983, plaintiff filed this action against the City of Baton Rouge, alleging that the defective roadway was under the City's custody. The Mayor was served with the petition and citation.
After filing exceptions which were overruled, the City filed a general denial of all of plaintiff's allegations. The parties then entered into settlement negotiations, but the City's Claims Review Committee ultimately rejected the settlement plan because of plaintiff's possible contributory negligence.
Upon discovering that Olympia Field was owned by BREC, the City notified plaintiff and filed a motion for summary judgment, asserting that it did not have ownership or control of the property and was not responsible for the maintenance of Olympia Field or any of its roadways. Attached to the motion was an affidavit by the City's Director of Public Works that BREC had purchased the land for Olympia Field from a private owner and that the City had not ever owned, maintained or controlled the property and its roadways.
Shortly thereafter, in October, 1985, plaintiff amended his petition to name BREC as a defendant on the basis of BREC's ownership and operation of Olympia Field. Plaintiff asserted that BREC was effectively the alter ego of the City as to the operation of the park. BREC filed an exception of prescription.
The trial court granted the City's motion for summary judgment, dismissing the City from the suit, but referred BREC's exception to the merits.[2] After the City's dismissal was affirmed on appeal, BREC reasserted its exception of prescription. The trial court then maintained the exception and dismissed the action.
The court of appeal affirmed in an unpublished opinion. 557 So.2d 1169 (1990). The court concluded that the criteria for applying Article 1153, set out by this court in Ray v. Alexandria Mall, 434 So.2d 1083 (La.1983), had not been met. Further noting the absence of any "legalistic smoke screen" that had been found in Ray, the court ruled that plaintiff's amended petition naming BREC as defendant did not relate back to the filing of the original petition.
We granted certiorari to review the applicability of Article 1153. 560 So.2d 33.
Fed.R.Civ.P. 15(c), the source of Article 1153, originally expressed essentially the same language as Article 1153. However, Rule 15(c) was amended in 1966 to provide *1170 for relation back under certain circumstances of amendments which change the party defendant. The amended Rule 15(c), which modifies the general rule that a defendant may not be added after the prescriptive period has run, was designed to avoid unjust and technical results in cases which should have been decided on the merits, a problem which was particularly troublesome in the context of actions by private citizens against government agencies. 6A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 1498 (1990). The amended rule sought to prevent injustice to plaintiffs who mistakenly named an incorrect defendant, at least when there was no prejudice to the subsequently named correct defendant. The rule, however, did not apply when the amendment sought to name a new and unrelated defendant. Giroir v. South Louisiana Medical Center, 475 So.2d 1040 (La.1985).
Relying on federal decisions under Rule 15(c), this court in the Ray decision set forth the criteria for determining, when a plaintiff amends his petition to name the correct party defendant after the original petition named an incorrect defendant, whether the amendment relates back to the filing of the original petition for purposes of prescription. These criteria are as follows:
(1) The amended claim arises out of the same transaction or occurrence set forth in the original pleading;
(2) The purported substitute defendant has received such notice of the institution of the action that he will not be prejudiced in maintaining a defense on the merits;
(3) The purported substitute defendant knows or should know that but for a mistake concerning the identity of the proper party defendant, the action would have been brought against him;
(4) The purported substitute defendant is not a wholly new or unrelated defendant, since this would be tantamount to assertion of a new cause of action which would have otherwise prescribed.[3]
Id. at 1087.
Applying the Ray criteria to the facts of the present case, we first note that the amended claim clearly arose out of the same occurrence set forth in the original pleading, namely, plaintiff's fall from his bicycle after hitting a pot hole in the roadway in Olympia Field.
The gravamen of the second criteria is prevention of prejudice to the defendant in preparing and conducting its defense. A fundamental purpose of prescriptive statutes is to protect a defendant from stale claims and from the loss or non-preservation of relevant proof. Prescriptive statutes seek to prevent prejudice to a defendant either by a delay in notification of the claim (the prejudice usually being the deprivation of an opportunity to perform a timely investigation of the claim) or by the loss of documents or witnesses which the defendant would have gathered or preserved if timely notified. Tate, Amendment of Pleadings in Louisiana, 43 Tulane Law Review 211 (1969). While designed to protect a defendant against prejudice from lack of notification of a claim within the period of limitation, prescriptive statutes are not designed to protect a defendant against non-prejudicial pleading mistakes that his opponent makes in filing the claim within the period. Allstate Insurance Co. v. Theriot, 376 So.2d 950 (La. 1979); Giroir v. South Louisiana Medical Center, 475 So.2d 1040 (La.1985). The federal courts have liberally applied the doctrine of relation back, especially if no disadvantage will accrue to the opposing party. Williams v. United States, 405 F.2d 234 (5th Cir.1968); 1A Barron & Holt, Federal Practice and Procedure § 448 (Wright ed. 1960).
In the present case the amendment did not prejudice BREC in preparing and conducting its defense. BREC did not dispose of any documents or suffer the loss of any *1171 witnesses who became unavailable because of the delay. There was no prejudice by loss of opportunity to investigate, because the City, upon being notified by the filing of the suit approximately six weeks after the accident, did perform an investigation. It is undisputed that the material gathered in the City's investigation (which includes photographs of the pot hole taken by the plaintiff's agent on the day of the accident) has been made available to BREC, which is an agency established to provide recreational services to the citizens of the City. BREC, having received the benefits of the City's investigation conducted shortly after the accident, is in a much more advantageous position than many defendants in tort actions whose first notice of the claim comes with the service of the suit filed on or shortly before the last day of the prescriptive period.
BREC argues, however, that Rule 15(c) requires "notice of the institution of the action" to the defendant named in the amendment in order for the amendment to relate back. The Advisory Committee's Note to the 1966 amendment to Rule 15(c) noted that formal or informal notice is required. However, the notice required by Rule 15(c) is "such notice ... that he will not be prejudiced in maintaining his defense on the merits". Prejudice is the significant consideration.
Moreover, when there is an identity of interest between the originally named defendant and the party the plaintiff actually intended to sue, the amendment may relate back, in the absence of prejudice, on the basis that institution of the action against one serves to provide notice of the litigation to the other. 6A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 1499 (1990); 3 Moore's Federal Practice ¶ 15.08[5] (2d ed. 1989). Sufficiency of the identity of interests depends upon the closeness of the relationship between the parties in their business operations and other activities, an identity of interests having been found between a parent corporation and a wholly owned subsidiary, Hernandez Jimenez v. Calero Toledo, 604 F.2d 99 (1st Cir.1979), and between corporations with interlocking officers or directors, DeCoelho v. Seaboard Shipping Corp., 535 F.Supp. 629 (D.C. Puerto Rico 1982). The relationship between BREC and the City is therefore an important consideration in the present case.
BREC was created by the La. Const. art. 14, § 3(b) (1921) and by La. Acts 1946, No. 246.[4] See also Section 1102 of the Plan of East Baton Rouge Parish. As a public corporation, BREC is a separate legal entity from the City of Baton Rouge.
The nine-member commission is composed of six citizens appointed by the Metropolitan Council; the Mayor or a City employee or officer designated by the Mayor; a member of the school board; and a member of the planning commission.[5] Therefore, the City's governing body and its chief executive appoint seven of the nine members, indicating an element of control similar to that existing between corporations with interlocking officers and directors. BREC uses many properties owned by the City, and the City, although retaining ownership, cannot sell or alienate as long as the recreational use continues. The Council makes appropriations for BREC's support. BREC uses the accounting services of the City's finance department, as well as the services of the City's engineering, building maintenance, central garage and purchasing divisions. BREC is part of and subject to the personnel system for City employees. BREC prepares and presents a capital budget annually to the City's planning commission, which has the power to approve or disapprove each item. The planning commission also must approve BREC's issuance of bonds and certificates of indebtedness, as well as appropriations for purchases of land and construction of buildings.
The relationship between the City and BREC was much the same as that between a parent corporation and a subsidiary *1172 which is a separate legal entity. As noted earlier, Rule 15(c) was amended for the purpose of preventing unjust results when a plaintiff, confronted with a maze of closely related corporate or governmental entities, initially chooses the wrong one to sue, unless prejudice exists. Under the circumstances of the present case which show a very close relationship between the two governmental entities and an absence of prejudice to the entity named in the amendment, institution of suit against the City served to provide "such notice of the institution of the action that [BREC] will not be prejudiced in maintaining [its] defense on the merits". Fed.R.Civ.Proc. 15(c).
As to the third criteria, BREC clearly knew or should have known that but for plaintiff's mistake in suing the City itself, rather than the separate but closely related governmental entity, the action would have been brought against BREC. Indeed, BREC's own evidence clearly establishes that its superintendent routinely informs claimants who contact him that BREC is the proper party to be sued in claims for accidents in the park and that the City is not.
The fourth criteria involves the determination whether BREC is a wholly new or unrelated defendant. In discussing the second criteria, we determined that BREC and the City were so closely related that service on the City provided notice of the litigation to BREC. It clearly follows that BREC is not a wholly new or unrelated defendant.
We conclude that the amended petition naming BREC as a defendant relates back under Article 1153 to the date of filing of the original petition which named the City as the owner and operator of Olympia Field. Accordingly, BREC's exception of prescription should have been overruled.
Accordingly, the judgments maintaining the exception of prescription are reversed, and the exception is overruled. The case is remanded to the district court for further proceedings.
NOTES
[1] La.Code Civ.Proc. art. 1153 provides:

When the action or defense asserted in the amended petition or answer arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of filing the original pleading.
[2] Plaintiff appealed the City's dismissal, arguing that the City was estopped from claiming it was not the proper party because of its failure to apprise plaintiff of that fact until after prescription had run. The court of appeal affirmed in an unpublished opinion, concluding that there was no allegation of bad faith on the part of the City and that plaintiff could have determined the true ownership of the park from the public records. The correctness of that decision is not before this court in the present case.
[3] The second and third criteria were added to Fed.R.Civ.P. 15(c), the source of La.Code Civ. Proc. art. 1153, by a 1966 amendment, but Article 1153 (which was adopted with the original enactment of the Code of Civil Procedure in 1960) was not thereafter amended.

The fourth criteria was added by judicial decisions.
[4] The provisions of the 1946 Act were generally incorporated into La.Rev.Stat.Ann. 33:4570-33:4570.4 by La. Acts 1985, No. 95.
[5] Service in the present case was made on the Mayor. However, the Mayor, having designated a City employee to serve, was not a member of the commission.